### In re STROBEL.

(District Court, E. D. New York. June 16, 1908.)

BANKRUPTCY—FAILURE TO OBEY ORDER TO TURN OVER PROPERTY TO TRUSTEE—CONTEMPT PROCEEDINGS.

An adjudication in bankruptcy was made on an involuntary petition, verified by the petitioner, in which he alleged that he was a creditor of the bankrupt in the sum of $3,500, and he was so given in the bankrupt's schedules. After the appointment of a receiver, the petitioner claimed ownership of certain property in possession of the bankrupt, and it was surrendered to him by the receiver on his giving a bond. A petition for confirmation of such action of the receiver was referred to a special commissioner, who found that petitioner was not the owner of the property, and determined its value and his report was confirmed by the court, and petitioner ordered to return the property or its value as so determin-

ed to the trustee in bankruptcy. On appeal such order was confirmed. *Held*, on motion by the trustee to punish petitioner for contempt in failing to obey such order, that the questions of the ownership and value of the property were res judicata, and that petitioner could not avoid compliance with the order by showing that he was in fact not a creditor; but that the $3,500 claimed in the petition in bankruptcy was only the value of the property which he had delivered to the bankrupt as a bailee, and that his filing such petition and making such claim to be a creditor was through the mistake of his counsel as to his legal rights.

In Bankruptcy.

Benjamin F. Edsall (Albert C. Aubery, of counsel), for trustee.
Frank Trenholm (A. J. Dittenhoefer, of counsel), for petitioner.

CHATFIELD, District Judge. The present motion is an application to punish one Abraham M. Bachrach for contempt, because of his failure to turn over the sum of $3,015.76, with interest, to the trustee in bankruptcy of one Leonard J. Strobel, individually and as surviving partner of the firm of Hines & Strobel.

A recital of the steps in this proceeding is necessary at the outset: The firm of Hines & Strobel was engaged in the manufacture of watch cases. By an arrangement with Mr. Bachrach, a contract was entered into, in August, 1904, under which Bachrach furnished gold, and Hines & Strobel were to manufacture watch cases for him, being compensated for the work which they did, and being obligated to return the gold, either in the form of watch cases or currency. It is now contended by Mr. Bachrach that this contract made the firm of Hines & Strobel bailees as to the gold furnished them. Subsequently, it appeared that the firm of Hines & Strobel had not turned over all of the gold furnished by Mr. Bachrach, or had manufactured some of the surplus metal and sold the watch cases made therefrom, and they were therefore indebted to Mr. Bachrach for the amounts so used. And a further arrangement was made under which Hines & Strobel were to give a chattel mortgage, on machinery and fixtures, for the amount of this indebtedness, and the arrangement between Bachrach and the firm as to the manufacture of watch cases was to go on. Nothing further happened until the summer of 1905, when certain creditors obtained judgments and made levies upon the property of the firm of Hines & Strobel. Mr. Bachrach then found that his chattel mortgage had been filed in the county of New York, instead of in Brooklyn, where the mortgagors resided, and, after consultation with his attorneys, it was decided to file a petition in bankruptcy. Such petition was prepared and verified by Mr. Bachrach, and contains an allegation that the firm of Hines & Strobel is indebted to the said Bachrach in the sum of $3,500. This petition was filed upon the 17th day of August, 1905, a receiver appointed, and the property at the plant of the bankrupt firm turned over by the receiver to Mr. Bachrach. Upon an application for confirmation of the delivery of this property by the receiver, Mr. Bachrach gave a bond, and the matter was referred to a special commissioner, who decided that the property should be returned to the trustee. This report was confirmed by an order made August 2, 1906. Mr. Bachrach then made an application to resettle and amend this order, and for such further

relief as might be proper, and this motion was in turn denied, upon the 19th day of November, 1906, and a reference ordered to ascertain the value of the property declared to have been wrongfully withheld from the trustee; the receiver's accounting being stayed pending the conclusion of the matter. Upon this reference the special commissioner determined the value of the property to be $3,015.76, and his report was confirmed by an order of this court upon the 12th day of August, 1907. An appeal was then taken to the Circuit Court of Appeals, and Mr. Bachrach gave a further bond, pending the appeal, to cover the sum of $3,015.76, with interest and costs of the appeal. Upon this appeal a decision has been rendered affirming the order both with respect to the value of the property as found by the commissioner, and with respect to the question of wrongful taking from the receiver by Mr. Bachrach. An order having been entered upon the mandate from the Circuit Court of Appeals, the trustee has applied for and obtained the order to show cause now under consideration.

It is alleged, in the affidavits submitted by Mr. Bachrach in opposition to this application, that he has never knowingly taken the position of creditor to the firm of Hines & Strobel. On the contrary, Mr. Bachrach swears: That he supposed he was the owner of all the gold and had a chattel mortgage upon tools and machinery in the premises, but that, prior to the time of filing the petition in bankruptcy, he found that his attorneys had by mistake filed the chattel mortgage in the wrong county, and that his lien thereby was lost; that his attorneys, upon investigation, advised him to file a petition in bankruptcy and to buy in the property in bankruptcy; and that he verified the petition under their instructions without reading the same. This petition, as has been said, contains a categorical statement that Bachrach is a creditor of Hines & Strobel.

The allegation of the petition is in the following language:

"The claim of your petitioner, Abraham M. Bachrach, is as follows: Goods, wares, and merchandise sold and delivered, and materials furnished, and moneys advanced by Abraham M. Bachrach, to the alleged bankrupt above named, on or about and between the 26th day of August, 1904, and the 15th day of August, 1905, both days inclusive, amounting to the sum of $3,500."

The verification is in the usual form required by the laws of the state of New York, and contains a statement that Abraham M. Bachrach, upon his oath, deposes and says:

"That he has read and knows the contents of the foregoing petition by him subscribed, and that the same is true," etc.

This petition was verified upon the 16th day of August, 1905, and according to the affidavits now presented was signed by Mr. Bachrach, as he claims, without reading the petition. An answer to the involuntary petition in bankruptcy had been interposed, and upon the hearing of the issues Mr. Bachrach was sworn as a witness before Judge Thomas in open court. Upon that hearing Mr. Bachrach testified from a written memorandum, and swore that Hines & Strobel, and Mr. Strobel, as surviving partner, were indebted to Mr. Bachrach for the balance due upon a considerable number of items contained in the memorandum from which he was testifying at the time. The

petition in bankruptcy was sustained and subsequently to this hearing, and after the receiver had turned over the property of the bankrupt to Mr. Bachrach, the petition to confirm that action of the receiver was also verified by Mr. Bachrach, upon the 22d day of January, 1906. This petition was prepared by the same attorneys who acted for Mr. Bachrach in the chattel mortgage transaction.

In the petition of January 22, 1906, Mr. Bachrach sets forth a written agreement between himself and the firm of Hines & Strobel, dated August 25, 1904, and alleges: That under this agreement he furnished to Hines & Strobel gold and silver for the manufacture of watch cases between August 26, 1904, and a short period prior to the filing of the petition in bankruptcy, and that at the time the receiver took possession of the property of the bankrupt certain watch cases, made out of gold and silver, were taken into the possession of the receiver, and later turned over to Mr. Bachrach. That this property was valued at $1,045.65. Further, upon the 5th day of April, 1906, Mr. Bachrach was examined before the special commissioner, upon the reference resulting from the last-mentioned petition and Mr. Bachrach testified that the sum of $3,500 mentioned by him in the petition in bankruptcy was made up of the gold delivered and money advanced to Hines & Strobel, between August 26, 1904, and August 15, 1905, and further on the 4th of May he testified that he had given testimony before Judge Thomas as to the indebtedness to him of the bankrupts and reiterated the statement that the bankrupts were indebted to him in the sum of $3,500 at the time of filing the petition in bankruptcy.

The schedules of the bankrupt show an indebtedness to Abraham M. Bachrach of $7,454.58, with interest secured by a chattel mortgage on the machinery and fixtures at 123 Middleton street, Brooklyn, for the sum of $10,000. This is the mortgage which was improperly filed and therefore claimed to be invalid. The schedules further show an unsecured indebtedness to Abraham M. Bachrach of $3,500, which is stated in the schedules to be the item claimed by Mr. Bachrach as a debt in the involuntary petition. Upon this reference the value of the property turned over to Mr. Bachrach by the receiver was found by the special commissioner to be $3,015.76. The report of the commissioner was confirmed, and his finding in this respect was one of the matters considered upon the appeal to the Circuit Court of Appeals and affirmed by that court.

It is impossible to escape from the conclusion that this finding of fact is res adjudicata and cannot be disturbed. It is also impossible to reach any conclusion other than that Mr. Bachrach assumed at various times throughout the course of this proceeding that he had a right to claim an indebtedness against the bankrupt estate, both for the amount covered by the chattel mortgage, and for the amount of advances in gold and money subsequent to the giving of the chattel mortgage. It is also evident that as early as the date of verifying the petition of January 22, 1906, Mr. Bachrach made claim to the specific articles, including gold, silver, and watch cases, in the possession of the receiver, and that this claim was inconsistent with his position as a creditor of the estate. It will be seen from this that the

present application is not based upon newly discovered evidence, remembering also that the mistake in the filing of the chattel mortgage was found out before the petition in bankruptcy was filed. It is an irresistible conclusion that Mr. Bachrach's mistake, if any, was one of law as to his actual position in the matter, and that the advice given by his attorneys may have been the reason for this mistake; but no mistake of fact, and no deceit on the part of any one connected with the proceedings in bankruptcy, unless it be that of Mr. Bachrach's own attorneys, is shown. To a certain extent Mr. Bachrach's claim to the specific articles was involved in the issues considered by the special commissioner in the year 1906, and the confirmation of that commissioner's report, with the affirmance of the Circuit Court of Appeals, renders this question also res adjudicata, and it cannot be attacked, in the absence of any newly discovered evidence, or in the absence of fraud on the part of any person for whose acts either the bankrupt or the parties to the bankruptcy proceedings are responsible.

It appears, further, that Mr. Bachrach was sued by his attorneys for their services, and interposed his alleged claim against them for negligence with reference to the filing of the mortgage, and for deceit at the time of filing the petition in bankruptcy, and, while the attorneys have prevailed in the lower courts, the matter is not yet decided upon appeal; but, so far as this court is concerned, those questions would seem to be entirely between Mr. Bachrach and his attorneys, and to be a matter with which this court has nothing to do. In so far as Mr. Bachrach seems to have mistaken his legal rights, or to have assumed inconsistent positions at different times, this court would, if it had the power, endeavor to protect Mr. Bachrach; but it is impossible to see how any phase of the situation can be considered undetermined or within the control of this court upon a motion of this character.

The actual position of Mr. Bachrach would seem to be that he has a claim for $7,454.58, with interest, which is unsecured, if the chattel mortgage be held invalid; that he has another claim against the estate for $3,500, with interest; and that if he makes restitution according to the decision entered upon the mandate of the Circuit Court of Appeals, he will be compelled to advance to the bankrupt estate $3,015.76, with interest and costs. The expenses of litigation cannot be considered, inasmuch as that is a hardship the responsibility for which cannot be put upon the other creditors of the estate. Against the amounts above enumerated (aggregating over $14,000), Mr. Bachrach has received a certain amount of gold watch cases and materials, which he alleges netted him about $1,000, but which have been decided in a manner binding upon this court to have been worth $3,015.76. As has been said, that question cannot be reopened, and the payment by Mr. Bachrach of the sum of $3,015.76, with interest, must be deemed to have been offset by the possession and use of the property which has been adjudicated to be of that value. This leaves Mr. Bachrach in the position of a general creditor for the sum of $3,500, which was the attitude taken by him, perhaps through wrong advice and through mistake of law, and also a general creditor for the amount of his mortgage, if the mortgage itself be held invalid. This court can see

no benefit which could result to Mr. Bachrach from an attempt to fix responsibility for the mistake in the filing of this mortgage. If Mr. Bachrach should be absolved, and if the court should hold that the mortgage became invalid as a lien, through no fault of his, no relief could be given if the mortgage be in fact invalid, and any remedy must be sought by him outside of the bankruptcy.

We have therefore to consider merely whether any relief can be given to Mr. Bachrach, because, as he alleges, he should have proceeded by replevin or other appropriate remedy, rather than by making himself a general creditor in bankruptcy for that amount. The incidental expenses and hardship to Mr. Bachrach naturally appeal to the court, in its position as a court of equity, inasmuch as it would appear that the position taken by Bachrach has been the result of bad advice or negligence, which was not discovered until too late for his protection; but it is impossible to prevent or cure incidental hardships at the expense of other parties who are standing upon legal rights, and it would seem that the only question open, namely, that of bettering Mr. Bachrach's position with reference to the $3,500 as to which he made himself a general creditor, must be determined as a matter of law, and that no equitable relief can be given against the other creditors.

The amount which Mr. Bachrach has been ordered to pay back being, as has been said, res adjudicata, the application to punish him for contempt must be granted, unless he deposits the amount directed within the time which may be specified upon the settlement of an order on this motion.